*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NICHOLAS RICHARD AIELLO,

        Plaintiff-Appellant,

v

ALLISON AIELLO,

        Defendant-Appellee.

UNPUBLISHED
April 18, 2025
9:41 AM

No. 370359
Livingston Circuit Court
Family Division
LC No. 22-057564-DM

Before: CAMERON, P.J., and GARRETT and MARIANI, JJ.

PER CURIAM.

In this child-custody dispute, plaintiff appeals by right the judgment of divorce awarding defendant sole legal and physical custody of their two minor children, VA and SA.[1] We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The parties married in 2010 and have two children together, VA and SA, who were born in 2012 and 2015, respectively.[2] The parties' marriage began to deteriorate in 2018, and although the parties attended counseling to address their marital issues, the relationship continued to deteriorate. In May 2022, plaintiff attempted suicide and was hospitalized for several weeks. Plaintiff voluntarily received psychiatric care during that time, and he subsequently moved out of the marital home shortly after he was discharged from his treatment facility. In July 2022, plaintiff again voluntarily admitted himself for psychiatric care for five days due to suicidal thoughts.

---

[1] The judgment also dissolved the parties' marriage, divided the marital property, and established a parenting-time schedule, child support, and spousal support. Neither party challenges these determinations on appeal.

[2] Defendant also has a son from a previous relationship, DA, whom plaintiff adopted in 2008. DA reached the age of majority during the lower court proceedings, so he was not subject to the trial court's custody determination, nor is he subject to this appeal. Any references to "the children" therefore refer to VA and SA.

In November 2022, plaintiff filed a complaint for divorce, seeking, in relevant part, joint legal and physical custody of the children. Defendant filed a countercomplaint for divorce seeking sole legal and physical custody of the children, with liberal parenting time for plaintiff. Throughout the proceedings, due to concerns regarding plaintiff's mental health, the trial court ordered plaintiff to complete a psychological evaluation, comply with the recommendations of his mental-health care providers, and comply with random drug and alcohol testing, which plaintiff largely did. Plaintiff also had limited parenting time with the children at the start of the proceedings due to the concerns about his mental health, but the court later increased plaintiff's parenting time to alternating weekends and one evening of weekday parenting time each week. The proceedings became more and more contentious as they progressed, resulting in many disputes and motions, and culminating in a five-day bench trial that began in November 2023 and ended in December 2023.

At the bench trial, both parties testified, presented additional witnesses, and presented documentary evidence. Approximately two months after the bench trial, the trial court issued a written opinion detailing its findings of fact and its conclusions regarding, in relevant part, custody and parenting time. The court found that an established custodial environment existed only with defendant because, although the children had a bond with plaintiff, their "bond was much stronger with" defendant; the children primarily looked to defendant "for love, guidance, security, and the necessities of life"; and defendant "has, and continues to have, a stronger and more active presence in the children's lives." The court noted that, because an established custodial environment existed only with defendant and plaintiff sought to change that environment, plaintiff was required to show by clear and convincing evidence that the joint legal and physical custody that he requested was in the children's best interests. After considering the best-interests factors set forth in MCL 722.23 and several of the parenting-time factors set forth in MCL 722.27a(7), the court concluded that plaintiff had failed to sufficiently establish that joint legal and physical custody was in the children's best interests. The court also found that the evidence had unequivocally shown a complete breakdown in the parties' ability to communicate about or cooperate and agree on "important decisions affecting the welfare of the minor children," and it was "left with the firm belief that it [wa]s not possible for these parties to co-parent the minor children at th[at] time." Based on its findings, the court awarded sole legal and physical custody of the children to defendant. This appeal followed.

## II. STANDARDS OF REVIEW

"[I]n child-custody disputes, 'all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of the evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.' " *Dailey v Kloenhamer*, 291 Mich App 660, 664; 811 NW2d 501 (2011), quoting MCL 722.28. This Court applies "three standards of review in custody cases." *Stoudemire v Thomas*, 344 Mich App 34, 42; 999 NW2d 43 (2022) (quotation marks and citation omitted). The trial court's factual findings are reviewed under the great-weight-of-the-evidence standard. *Id*. "A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *Id*. (quotation marks and citation omitted). "Questions of law are reviewed for clear legal error. A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law." *Id*. (quotation marks and citation omitted). Discretionary rulings, such as decisions regarding custody, are reviewed for an abuse of discretion. *Id*. "In child-custody cases specifically, an abuse

of discretion retains the historic standard under which the trial court's decision must be palpably and grossly violative of fact and logic." *Kuebler v Kuebler*, 346 Mich App 633, 653; 13 NW3d 339 (2023) (quotation marks and citation omitted). Reviewing courts should defer to the trial court's superior ability to weigh evidence, assess credibility, and otherwise evaluate a child's best interests. *Sabatine v Sabatine*, 513 Mich 276, 285; 15 NW3d 204 (2024).

### III. ESTABLISHED CUSTODIAL ENVIRONMENT

Plaintiff argues that the trial court's finding that there was an established custodial environment only with defendant was against the great weight of the evidence. We disagree.

"When resolving important decisions that affect the welfare of the child, the court must first consider whether the proposed change would modify the established custodial environment." *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010). An established custodial environment exists with a party "if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c). Such an environment is one of "significant duration" and comprises "both the physical and psychological sense in which the relationship between the custodian and the child is marked by qualities of security, stability and permanence." *Sabatine*, 513 Mich at 286 (quotation marks and citation omitted). "The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship" are factors to be considered in determining whether an established custodial environment exists. MCL 722.27(1)(c). The parties' "preseparation circumstances" and "whether an established custodial environment existed prior to separation" are not themselves dispositive, but may be relevant to "whether such an environment continues to exist, or a new one exists, at the time of the trial court's custody determination." *Sabatine*, 513 Mich at 289-290. "An established custodial environment may exist in more than one home." *Marik v Marik*, 325 Mich App 353, 361; 925 NW2d 885 (2018) (quotation marks and citation omitted). "Whether an established custodial environment exists is a question of fact that the trial court must address before it determines the child's best interests." *Stoudemire*, 344 Mich App at 43 (quotation marks and citation omitted).

In finding that the children had an established custodial environment only with defendant, the trial court acknowledged the children's bond and time spent with plaintiff, but it also found that the evidence had clearly demonstrated that the children had a "much stronger" bond with defendant and "look[ed] primarily to [defendant] for love, guidance, security, and the necessities of life." The trial court also found—and the record reflects—that defendant was the children's primary caregiver throughout their lives, including after the parties' separation. Testimony established that although plaintiff assisted the children with their homework and briefly coached the children's sports teams, defendant was responsible for taking the children to school and managing the children's extracurricular activities, medical care, appointments, and day-to-day needs. The children's reliance on defendant for these daily needs became more pronounced after plaintiff's suicide attempt in May 2022 given plaintiff's need to focus on his own mental health, and even more so after the parties' separation. Plaintiff spent little time with the children during the parties' marriage and even less so following his suicide attempt, and he seemingly made few attempts to engage in additional parenting time with the children following the parties' separation. Indeed, defendant offered plaintiff several opportunities for additional parenting time throughout the proceedings, but plaintiff declined nearly all of them. And although the testimony established

that plaintiff attended some of the children's medical and counseling appointments after the parties' separation, it also established that he only did so at defendant's behest.

The trial court also considered plaintiff's mental health and the impact it had on his ability to parent, concluding that plaintiff's "mental health and impulsive behaviors continue to have a negative impact on how he is able to effectively parent" and have "negatively affected" the children. Plaintiff testified that he believed he could provide the children with love, guidance, and discipline, but trial testimony established that plaintiff's conduct toward the children had a negative effect on them mentally and caused them to experience feelings of fear, uncertainty, and abandonment. The testimony also established that the children continued to address and work through these feelings with a therapist. Conversely, defendant testified that she and the children had a very close relationship and that the children turned to her if they were scared, hurt, or needed comfort. Defendant further testified that she felt uncomfortable leaving the children alone with defendant given his mental-health concerns and historically minimal involvement in providing for the children's day-to-day needs. The court noted defendant's concerns and concluded that, based on the evidence presented to it, defendant's "concerns regarding [plaintiff's] mental instability and impulsive behaviors were not exaggerated by her." It is thus clear that the court, having considered the evidence presented, credited defendant's testimony regarding whom the children turned to for love, guidance, security, and daily necessities, and we see no basis to disrupt that credibility determination. See *Sabatine*, 513 Mich at 285. Accordingly, plaintiff has failed to demonstrate that the trial court's finding that an established custodial environment existed only with defendant was against the great weight of the evidence. See *Stoudemire*, 344 Mich App at 42.[3]

---

[3] At oral argument before this Court, counsel for plaintiff argued that the trial court ran afoul of *Sabatine*, 513 Mich at 289-290, by placing too much emphasis on the parties' preseparation circumstances rather than the circumstances that existed at the time of the custody determination, and also erred by determining that the children did not have an established custodial environment with plaintiff simply because they had *more* of such an environment with defendant. These specific criticisms are not particularly developed in plaintiff's briefing, and in any event, the record, in our view, does not bear them out. Consistent with *Sabatine*, the trial court treated the circumstances prior to the parties' separation as a potentially relevant, but not dispositive, consideration. See *id*. And while the court at times used comparative language in discussing the parties' respective relationships and interactions with the children, the record does not indicate that the court unduly viewed the established-custodial-environment assessment as a competition between the parties or an "either/or" proposition. Rather, the record duly supports the conclusion that the court properly evaluated—for each party, and at the time of the custody determination—whether the environment that existed with that party amounted to an established custodial environment under MCL 722.27(1)(c). Plaintiff has failed to demonstrate, on these grounds or any other, that the trial court's established-custodial-environment determination was against the great weight of the evidence.

## IV. BEST-INTERESTS DETERMINATION

Plaintiff also argues that several of the trial court's best-interests findings were either premised on clear legal error or against the great weight of the evidence.[4] We disagree.

Once the trial court concludes that one or more established custodial environments exists, it "shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." MCL 722.27(1)(c). When there is a custody or parenting-time proposal that would alter the established custodial environment, the moving party bears the burden of proving by clear and convincing evidence that the proposed change is in the child's best interests. *Kuebler*, 346 Mich App at 669-670. "To determine a child's best interests, the trial court is required to consider the 12 best-interest factors found in MCL 722.23, and to apply the appropriate standard of proof." *Id.* at 671.

Plaintiff first argues that the trial court's findings under factors (b) (capacity and disposition to give child love, affection, and guidance), (d) (length of time in a stable, satisfactory environment), (f) (moral fitness), (g) (mental and physical health), and (h) (home, school, and community record)—all of which the court found either favored or slightly favored defendant—were legally erroneous. See MCL 722.23(b), (d), (f), (g), (h). Specifically, plaintiff argues that the trial court failed to make adequate factual findings in support of its determination for each of these factors. Because of this failure, plaintiff contends, the court's determination for each of these factors is "not reviewable by this Court," and remand for a new child custody hearing is necessary. We disagree.

In a bench trial, a trial court must make findings of fact and separately state its legal conclusions. MCR 2.517(A)(1). That said, "[b]rief, definite, and pertinent findings and conclusions on the contested matters are sufficient, without overelaboration of detail or particularization of facts." MCR 2.517(A)(2). Thus, in the context of child-custody disputes, the trial court must consider and explicitly state its findings of fact and legal conclusions regarding each best-interests factor. *Rittershaus v Rittershaus*, 273 Mich App 462, 475; 730 NW2d 262 (2007). The court need not comment on every matter in evidence or every argument raised by each party, but "the record must be sufficient for this Court to determine whether the evidence clearly preponderates against the trial court's findings." *Id.* (quotation marks and citations omitted). When a trial court fails to make sufficient findings for each of the best-interests factors, "the proper remedy" is to remand for a new custody hearing or for the trial court "to make a

---

[4] Plaintiff does not challenge the trial court's findings regarding best-interests factors (e) (permanence of existing or proposed custodial home or homes), which the court found favored the parties equally; (i) (child's reasonable preference), which the court "considered" in light of the children's ages but did not disclose; (k) (domestic violence), which the court found favored the parties equally; and (*l*) (any other factor relevant to the particular dispute), which the court found was not relevant to its determination because "[a]ll reported significant data ha[d] been addressed" by the remaining best-interests factors. See MCL 722.23(e), (i), (k), (*l*).

determination whether the current record is sufficient to make the proper evidentiary findings." *Id.* at 475-476.

A review of the record in this case reveals that the trial court thoroughly addressed best-interests factors (b), (d), (f), (g), and (h). Indeed, for each factor, the court clearly summarized its factual findings based on the evidence presented at trial and thereafter determined whether that factor favored or slightly favored either party or favored both parties equally. Approximately 20 pages of the trial court's 38-page opinion were specifically dedicated to discussing the custody and parenting-time determinations. Approximately 12 of those 20 pages focused exclusively on the trial court's factual findings and legal conclusions regarding the 12 best-interests factors. And approximately 4 of those 12 pages—a quarter of the court's discussion of the best-interests factors—focused on the court's factual findings and legal conclusions for factors (b), (d), (f), (g), and (h). For instance, regarding factor (b), which addresses the parties' capacity and disposition "to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any," MCL 722.23(b), the court identified the parties' testimony relevant to this particular factor. Specifically, the court noted that both parties testified that defendant was "primarily responsible" for the children's education and general needs and that plaintiff, during his testimony, acknowledged that the children "excelled during that time." The court further noted that both parties were Catholic and remained interested in raising their children as Catholic, but plaintiff never took the children "to Mass on his Sunday of parenting time." Conversely, defendant took the children "to Mass with her every week they [we]re with her," as plaintiff was aware. Defendant also attended all major religious events in the children's lives, but plaintiff did not, including failing to "attend the sacrament of Reconciliation in the Spring of 2023." After detailing the evidence relevant to this factor, the court then concluded that, based on this evidence, this factor favored defendant. The remaining challenged factors—(d), (f), (g), and (h)—all reflect the same structure, and made sufficiently clear what the court found as to each factor and why. The trial court's factual findings and legal conclusions regarding the challenged factors were by no means lacking, and the court left a sufficiently clear record from which this Court could determine whether the evidence clearly preponderated against its findings. See *Rittershaus*, 273 Mich App at 475. Accordingly, remand for a new custody hearing is not warranted. See *id*. at 475-476.[5]

Plaintiff also argues that the trial court's findings under best-interests factors (a) (love, affection, and other emotional ties), (c) (capacity and disposition to provide food, clothing, medical or remedial care, and other material needs), and (j) (willingness and ability to facilitate and encourage relationship between child and other parent) were against the great weight of the evidence. We disagree.

Factor (a) addresses "[t]he love, affection, and other emotional ties existing between the parties involved and the child." MCL 722.23(a). The trial found that this factor slightly favored defendant. The court noted that "both parties love their children and express great affection for

---

[5] Furthermore, although plaintiff does not challenge whether the trial court's findings as to these factors were against the great weight of the evidence, our review of those findings and of the record in this case makes clear that they were not.

them" and that the children "have love, affection, and emotional ties with both parents," but the evidence demonstrated that the children's "emotional bond with [defendant] was stronger." We do not find that "the evidence clearly preponderates in the opposite direction" of the court's findings. See *Stoudemire*, 344 Mich App at 42. Defendant testified that she had a great relationship with the children, and she showed her love for the children by supporting their interests and hobbies and encouraging them to do their best. Defendant also testified that the children turned to her when they were upset, scared, hurt, or needed comfort. Plaintiff testified that he had a good relationship with the children, but he acknowledged that the children shared certain things with him and certain things with defendant. Plaintiff also testified that he had high expectations for the children, explaining that he had "never told the children that what they do isn't good enough" but frequently tells them, "You're better than that," when they do something that he disapproves of. Defendant testified that plaintiff's conduct toward the children made them feel as if they could not meet his expectations, which subsequently led to unhealthy eating habits and feelings of fear, uncertainty, and abandonment, all of which the children were still working through with their therapist. Defendant also expressed concern about plaintiff's unequal treatment of the children and how it affected their emotional well-being, noting that plaintiff had previously provided a much larger birthday celebration for SA than VA and that VA often came home upset and acted differently toward SA following their parenting time with plaintiff. Given the evidence presented, the court's findings regarding this factor were not against the great weight of the evidence. See *id*.

Factor (c) addresses the parties' capacity and disposition "to provide the child with food, clothing, medical care," and other necessities, MCL 722.23(c), and the trial court found that this factor favored defendant. The court found that both parties had "sufficient incomes to provide for the minor children," that the "children's needs [we]re being met financially by both parties," and that both parties had "the capacity and disposition to continue ensuring their children's needs are met," but defendant "demonstrate[d] a better grasp of the minor children's needs." The court also expressed that it had "significant concerns" regarding plaintiff's "poor money manage[ment]" and "the lack of communication over routine issues," such as the children's therapy, medication, insurance, and "latchkey fees." The record supports the court's findings. The record reflects that although plaintiff earned significantly more than defendant, both parties were employed full-time and earned enough to financially provide for the children's needs. Plaintiff, however, acknowledged spending large sums of money on romantic relationships following the parties' separation while simultaneously arguing with defendant about routine expenditures for the children. Plaintiff also testified that he had opened a new credit card in March 2023 and had accumulated more than $21,000 in credit-card debt on that card since that time. Moreover, plaintiff testified that he had not purchased clothing or school uniforms for the children to keep at his home even after defendant had asked him to so that the children did not have to travel to and from parenting time with them. Defendant testified that she purchased all of the children's clothing and additional school uniforms after plaintiff left the marital home, and although plaintiff bought a pair of soccer cleats for VA, defendant ultimately had to return them because they were the incorrect size. Plaintiff had attended some of the children's counseling appointments, two of the children's doctor visits, and one dentist appointment following the parties' separation, but he only did so at defendant's behest, and defendant had otherwise been responsible for taking the children to every other counseling, medical, and dental appointment that they had. Defendant also testified that she had been responsible for finding a therapist for the children in the first instance, noting that she interviewed several different therapists beforehand to ensure that the children would be

comfortable during therapy. In light of this evidence, the trial court's findings regarding this factor were not against the great weight of the evidence. See *Stoudemire*, 344 Mich App at 42.

Factor (j) addresses "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." MCL 722.23(j). The trial court found that factor (j) favored defendant because it was "readily apparent from the testimony and voluminous exhibits that [plaintiff's] communication [wa]s harassing, demeaning, and demanding in nature," and plaintiff's "lack of productive communication negatively impact[ed] the children and their abilities to maintain strong bonds with each parent." The court stated that it had "real concerns" about plaintiff's ability "to encourage a close and continuing parent-child relationship" between the children and defendant, noting that it "[h]ad been presented with considerable evidence . . . that imposing a condition of co-parenting counseling w[ould] not alleviate [plaintiff's] hostility towards [defendant]." The record supports the trial court's findings under this factor. Plaintiff testified that he was willing to facilitate a close and continuing relationship between the children and defendant, emphasizing that he encouraged the children to get gifts for defendant for Mother's Day and her birthday and that he invited defendant to special events, but he did not believe that defendant reciprocated his efforts to facilitate a good relationship with the children. Defendant testified, however, that she also encouraged the children to make cards for plaintiff's birthday and helped them pick out gifts. Defendant also denied ever interfering with the children's relationship with plaintiff, noting that she allowed the children to communicate with plaintiff through electronic devices while they were residing with her. Defendant also offered plaintiff additional parenting time on several occasions, but plaintiff routinely declined, often becoming confrontational or demeaning toward defendant during those communications. Defendant also testified that plaintiff sent her over 5,000 messages on a court-managed communication program throughout the proceedings—a multitude of which were admitted at trial and emphasized by the court in its best-interests findings—and nearly all of the messages were demanding, threatening, or demeaning. In one message, for instance, plaintiff told defendant, "Please tell the boys that you are the problem. You are the reason nothing changes. You are the one holding everything up. I know I will when they ask." Although both parties stated that they were willing and able to facilitate a close and continuing relationship between the children and the other party, plaintiff's behavior, as demonstrated by the record, clearly indicated that he was unwilling to do so. Accordingly, the trial court's findings regarding this factor were not against the great weight of the evidence. See *Stoudemire*, 344 Mich App at 42.

## V. LEGAL CUSTODY

Finally, plaintiff argues that the trial court abused its discretion by granting defendant sole legal custody of the children. We disagree.

When considering joint legal custody, in addition to the best-interests factors already discussed, MCL 722.26a(1)(a), the trial court must consider "[w]hether the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child," MCL 722.26a(1)(b). "If two equally capable parents whose marriage relationship has irreconcilably broken down are unable to cooperate and to agree generally concerning important decisions affecting the welfare of their children, the court has no alternative but to determine which parent shall have sole custody of the children." *Bofysil v Bofysil*, 332 Mich App 232, 249; 956

NW2d 544 (2020) (quotation marks and citation omitted). The record in this case has made it abundantly clear that the parties could not cooperate or agree on even minor issues related to joint legal custody. Both parties also openly admitted at trial that effective communication with one another regarding the children was "either limited or gone." The record is also replete with thousands of messages between the parties evidencing their inability to communicate with each other about the children or come to any sort of agreement regarding the children's day-to-day care and needs. In most of the parties' communications, plaintiff was openly hostile toward defendant and, as the trial court noted, was "unnecessarily arguing" with defendant about nearly everything that pertained to the children's care and needs, including insurance, therapy, medication, "field trips . . . , latchkey fees, and [the] children's summer sports." Plaintiff also repeatedly threatened defendant with litigation or some other form of punishment if she did not agree with him on a particular matter. Defendant testified that, in light of her communications with plaintiff throughout the proceedings, she did not believe that she and plaintiff could communicate or cooperate with one another in the future without extensive court involvement. On this record, it is clear that the parties' relationship had broken down to a point where they could no longer communicate, cooperate, and generally agree concerning decisions about the children. Considering that, along with the 12 best-interests factors, the trial court did not err by determining that sole legal custody with defendant, rather than joint legal custody, was in the children's best interests. See *id.*; MCL 722.23a(1); MCL 722.23. Accordingly, the trial court's decision to award sole legal custody to defendant was proper. See *Bofysil*, 332 Mich App at 249.

Affirmed.

/s/ Thomas C. Cameron
/s/ Kristina Robinson Garrett
/s/ Philip P. Mariani

-9-